**J. B. OLSON, Administrator With Will Annexed of the Estate of Ben Olson, Deceased, Plaintiff,**

v.

**George REISIMER, Defendant.**

**No. 57–C–291.**

United States District Court
E. D. Wisconsin.
March 2, 1959.

542

R. M. Stroud and Stroud, Stebbins & Stroud, Madison, Wis., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., Lyle M. Turner, M. Carr Ferguson, John M. Murray, Attys., Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., and Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This is an action for refund of payment of deficiency estate tax principal and interest in the total amount of $40,031.27, together with interest thereon.

Ben and Nellie Olson owned certain real property in joint tenancy. Nellie Olson had furnished the consideration therefor, in part, by making the initial payment out of proceeds of other property she owned, and also by applying income from a rooming house she operated, on the mortgage.

In 1931, when Nellie was 65 and Ben 63 years old, they executed a joint and mutual will whereby the survivor of them was to have a life estate in said property with power to invade corpus where necessary for his or her comfort, care and maintenance. The remainder interest therein was devised to their son, Grover Olson (or such other persons as the will directed) in trust, to become operative on the death of the survivor.

Nellie Olson died in 1933. At this time the property was valued at approximately $35,000. No federal estate tax respecting this property was imposed on the estate of Nellie Olson. On petition of Grover Olson, a certificate of termination of joint tenancy was issued by the Columbia County Court in April 1934. In 1939, this same court issued an order authorizing petitioner Ben Olson, as life tenant, to sell a certain lot, and authorizing Grover Olson, as trustee for whatever residuary interest existed in said property, to join in the sale.

In 1948, on petition of Ben Olson, the Columbia County Court construed the Will of Nellie Olson for the purpose of determining whether petitioner had such interest in the property as to enable him to execute a lease of a duration that might survive the death of the lessor, Ben Olson. That court held that the interest of Ben Olson changed from a joint tenancy interest to a life estate on the death of Nellie, and that the unconsumed corpus of the property was to pass to the remainderman on the death of Ben Olson. These interests in the property were determined according to a contract inferred from the provisions of the Will which became irrevocable on the death of Nellie Olson.

Two Wisconsin inheritance tax orders were entered in the probate of Nellie Olson's estate. That of the year 1933 charged Ben Olson with one-half joint interest in the property. The order of 1954 was entered following the death of Ben Olson. This imposed a tax on the remainder interest passing to Grover Olson in the whole property, based on the valuation thereof at the time of the death of the life tenant, Ben Olson, at which time the remainderman came into beneficial enjoyment or possession. An opinion which formed the basis of the order respecting the interest of Ben and Grover Olson in the property was filed by the Columbia County Court, In the Matter of the Estate of Nellie Olson, Deceased, in April 1953. This holds that, for Wisconsin inheritance tax purposes, the fee in the property passed from Nellie Olson to Grover Olson, subject to the life estate of Ben Olson.

█ The question presented by this suit is whether all or any part of the value of this property is includible in determining the value of the gross estate of Ben Olson for the purpose of imposition of tax under Section 811 of the Internal Revenue Code of 1939.

The applicable statute is Section 811, Title 26 U.S.C.A., Internal Revenue Code (1939, as amended) in effect as of the time of the death of Ben Olson, providing as follows:

"§ 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \*

"(c) Transfers in contemplation of, or taking effect at, death

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which

does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or * * * "

Two theories as to the includibility of this property in the gross estate of Ben Olson are proposed in this action.

First. Ben Olson, as surviving joint tenant, took the fee in the whole property on Nellie's death, and he retained this interest until his death. Therefore, the value of the property is includible in his gross estate under Section 811(a). If a transfer of the remainder interest in the property had occurred during Ben's lifetime, the value thereof would nevertheless be includible under Section 811(c) (1) (B). This is the position of the Director, the defendant here, and the theory on which the deficiency had been asserted.

Second. There was a severance of the joint tenancy. Under the joint and mutual will, Nellie Olson devised a life estate with limited power to invade corpus in her one-half of the property to Ben Olson, and the remainder therein, to Grover. Upon her death, Ben, in performance of the contractual elements of the will, transferred the remainder interest in his one-half of the property to Grover, retaining a similar life estate therein. This inter vivos transfer by Ben Olson to Grover of the remainder interest in Ben's one-half of the property falls within the exception under Section 811(c) (1) (B) in that the transaction by which this interest was transferred constituted a "bona fide sale for an adequate and full consideration in money or money's worth." This is the position of plaintiff.

▪ It is undisputed that at least prior to 1931, the time of execution of the joint and mutual will, Ben and Nellie Olson owned the property in joint tenancy. As joint tenants, each of them owned an undivided one-half thereof, with rights of survivorship.

Assuming, but not deciding, that this court must trace the subsequent history of Ben Olson's interest by an original construction of the joint and mutual will, it appears that he did not acquire ownership in fee in Nellie's one-half thereunder. Were this an attempted testamentary disposition of joint tenancy assets by one joint tenant, it would be inoperative to create any interest in the devisees, Ben and Grover Olson, under Wisconsin law. Wallace v. St. John, 1903, 119 Wis. 585, 97 N.W. 197; Bassler v. Rewodlinski, 1906, 130 Wis. 26, 109 N.W. 1032, 7 L.R.A.,N.S., 701. However, the survivorship incident may be defeated by a severance of the joint tenancy. Severance may be accomplished by mutual agreement. In re Estate of King, 1952, 261 Wis. 266, 52 N.W.2d 885.

▪ A pre-existing agreement respecting the disposition of the joint tenancy assets and effecting a severance of the joint tenancy may be inferred from the opening recital of the joint and mutual will of Ben and Nellie Olson, as well as from its contractual provisions respecting the disposition of the remainder interest in the survivor's one-half of the property. Where a joint and mutual will reveals a plain intention that it was executed pursuant to an agreement of the parties respecting the disposition of their property, the contractual provisions evidenced by the will become irrevocable on the death of the first testator. Doyle v. Fischer, 1924, 183 Wis. 599, 198 N.W. 763, 33 A.L.R. 733.

Estate of Awtry v. Commissioner, 8 Cir., 1955, 221 F.2d 749, cited by the Director as contrary to the conclusion that former joint tenancy assets may be disposed by will under given circumstances, is not controlling here because that decision is based on Iowa law. Nor does that case preclude such a conclusion. In an extensive discussion of the question of devolution of joint tenancy assets, the court cites Schultz v. Brewer, 244 Iowa 21, 55 N.W.2d 561 which quotes with ap-

proval the Annotation in 108 A.L.R. 867, 868–869 to the effect that a plain intention, found either in the will or the contract pursuant to which the will is executed, imposing a limitation on the property of the other during his lifetime, will prevent the disposition thereof by the owner in good faith after the death of the other spouse. This statement of the law appears to be in accord generally with Wisconsin law. See Doyle v. Fischer, supra.

An original construction of the will is not necessary in this action. Legal interests and rights are created by state law. Federal tax liability in respect of rights so created is determined by the Internal Revenue Acts. Morgan v. Commissioner, 1940, 309 U.S. 78, 625, 60 S. Ct. 424, 84 L.Ed. 585, 1035. The criterion as to taxation in respect of this property under Section 811 is ownership in the decedent. Section 811(a) reaches property owned by him at his death; Section 811(c) enlarges the property upon which the estate tax may be assessed to include certain assets of which the decedent made a transfer during his life. Commissioner of Internal Revenue v. Nathan's Estate, 7 Cir., 1947, 159 F.2d 546, certiorari denied 334 U.S. 843, 68 S.Ct. 1510, 92 L.Ed. 1767.

■ The Columbia County Court has decreed what right, title and interest Ben Olson held in this property under Wisconsin law upon Nellie's death. The jurisdiction of the court, the adversary nature of the proceeding, and the fact of notice to all interested parties have not been challenged. Therefore, the determination of that court that on Nellie Olson's death Ben Olson took a life estate in the property, with remainder over, is conclusive and binding with respect to the imposition of federal tax assessed in respect thereof on the estate of Ben Olson. Pitts v. Hamrick, 4 Cir., 1955, 228 F.2d 486; Weyenberg v. United States, D.C.E.D.Wis.1955, 135 Supp. 299; Gordon v. United States, D.C.W.D. Mo.1958, 163 F.Supp. 542.[1]

The choice of the words "upon the death of Nellie" by the Columbia County Court in designating the time of change from joint tenancy to life estate ownership in Ben Olson, precludes a finding that joint tenancy survivorship rights ripened in Ben Olson on Nellie's death. The interests in the property as decreed by that court could not be created wholly by devise. The spouse dying first could not by devise diminish the estate of the survivor in his one-half share from a fee to a life estate, nor dispose of the remainder interest therein, since this decedent did not own the survivor's share. Ben Olson could not make a devise effective on Nellie's death. "It is elementary that no interest in the decedent's property passes by descent or will until the death of the decedent." Estate of Awtry v. Commissioner, 221 F.2d at page 759.

Under the declaration of rights by the Columbia County Court, it follows that the creation of the remainder interest of Grover Olson in Ben's one-half of the property constituted an inter vivos transfer by Ben in performance of the contract pursuant to which the will was executed. In analyzing the transactions provided for by this contract, it is found that Ben and Nellie Olson relinquished their joint tenancy survivorship rights. As between them, this was a *quid pro quo* transaction whereby each retained ownership in his share and relinquished his rights in that of the other. Even if this were considered to constitute a transfer of property, it does not result in liability for estate tax in respect to the property interest transferred. Sullivan's Estate v. Commissioner of Internal Revenue, 9 Cir., 1949, 175 F.2d 657.[2]

**1.** See also the extensive discussion, citing 1 Paul, Federal Estate and Gift Taxation, 1942, § 1.11 of the question of the conclusiveness of state court decisions with respect to determining federal tax liability in Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218.

**2.** See also Baltimore National Bank v. United States, D.C.D.Md.1955, 136 F.

Under the contract, the surviving spouse received a promise of a devise of a life estate in the other spouse's one-half of the property. Nellie Olson, having died without a revocation of the will, performed this promise as well as the further obligation to devise the remainder interest in her property to Grover Olson. Performance by one party made the contract irrevocable and gave it validity with regard to the statute of frauds. Doyle v. Fischer, supra. The promise of the surviving spouse to transfer the remainder interest in his share to Grover was held to have been performed on Nellie's death by the Columbia County Court under its finding that Ben had only a life estate in the property. Grover Olson as devisee-grantee of the remainder interest is a third-party beneficiary under the contract between his parents.

It remains to be determined whether the transfer by Ben Olson of the remainder interest in his share, with enjoyment and possession postponed until the grantor's death, falls within the exception provided for in Section 811(c) (1), exempting the value of the transferred property from includibility in determining the value of the gross estate of the grantor.

■ The retention of a life estate in property by a grantor, who transfers a remainder interest therein, constitutes a gift and does not fall within the exception of the statute, in that there is not a sale for adequate and full consideration. The grantor receives nothing new of value to prevent the diminishing of his estate. Updike v. Commissioner, 8 Cir., 1937, 88 F.2d 807, certiorari denied 301 U.S. 708, 57 S.Ct. 942, 81 L.Ed. 1362; Latty v. Commissioner of Internal Revenue, 6 Cir., 1933, 62 F.2d 952; Giannini v. Commissioner of Internal Revenue, 9 Cir., 1945, 148 F.2d 285, certiorari denied 326 U.S. 730, 66 S.Ct. 38, 90 L.Ed. 434.

In considering the total contract here, it is seen that an exchange of assets occurred. In consideration of Ben's transferring the remainder in his property, he received a life estate in that of Nellie. That the overall transaction of contract and will is in the nature of a testamentary disposition of the family property by a husband and wife does not prevent a bona fide, arm's length transaction as contemplated by the exception under the statute. Sullivan's Estate v. Commissioner of Internal Revenue, supra.

■ The word "sale" as used in Section 811(c) (1) has been defined as "an exchange resulting from a bargain, one in which the beneficiary gives or the grantor receives something of money value or a binding promise." Mollenberg's Estate v. Commissioner of Internal Revenue, 2 Cir., 1949, 173 F.2d 698, 701; Peoples First National Bank & Trust Co. v. United States, 3 Cir., 1957, 241 F.2d 420.

To establish the adequacy of the consideration, petitioner has offered several alternative methods for evaluation of the assets exchanged. The Director has not challenged the proposed values or offered others, but has rested on the premise that the fee to the whole property having vested in Ben Olson on his wife's death, a transfer of the remainder interest by him could not come within the exception at all. See Updike v. Commissioner, supra.

■ In computing the values of these assets, the propriety and soundness of Tables used in Treasury Regulations 105, § 81.10(i) has the approval of the courts. Koshland's Estate v. Commissioner of Internal Revenue, 9 Cir., 1949, 177 F.2d 851. The transaction upon which exemption from tax liability rests under Section 811(c) (1) (B) is the "sale" or transfer of assets. Adequacy of consideration, for the purpose of this statute, must be determined with regard to the value of the assets exchanged rather than their sufficiency to support the promise to devise and transfer the prop-

Supp. 642, 648, where the court emphasized that the wife had furnished part of the consideration for the assets

in question, as Nellie Olson did in the instant case.

erty at the time of the execution of the contract. Where actual facts are available, they are used in preference to actuarial probabilities. Nourse v. Riddell, D.C.S.D.Cal.1956, 143 F.Supp. 759. Ben Olson enjoyed the life estate devised to him by Nellie for a period of 19 years. Use of the Tables in light of this information reveals a value of $9,193.76 for the life estate, and of $8,306.24 for the remainder interest.[3]

The transfer of a remainder interest worth $8,306.24 in exchange for a life estate worth $9,193.76 constitutes a transaction in which a fair equivalent of property moves to the transferor. Ben Olson's use of the life estate devised to him by Nellie prevented the diminishing of the value of his estate in his one-half of the property. In light of other decisions evaluating the adequacy of the consideration in case of an inter vivos transfer under Section 811, Ben Olson received "adequate and full consideration" in this transaction. In Estate of Samuel Want, 1958, 29 T.C. 1223 the decedent transferred $25,000 in consideration of services rendered or to be rendered by others. This was held to constitute adequate and full consideration for the purpose of Section 811(c). In Nourse v. Riddell, supra, the decedent reserved a life estate in her property worth $164,513.79, transferring the remainder interest therein to her children. In return she received a life estate in other property worth $283,142.80. The court computed the value of the latter life estate in light of the decedent's actual time of enjoyment which exceeded that of the actuarial probabilities and found that the value received in the transaction constituted adequate consideration.

Nellie Olson's one-half of the property in question here passed under her will, by devise of a life estate to Ben Olson with remainder over to Grover Olson. Notwithstanding the failure to impose a federal estate tax on the estate of Nellie Olson with respect to this devise, the value thereof is not includible in the gross estate of Ben Olson, since this decedent did not own this property.

An independent construction of the joint and mutual will of Ben and Nellie Olson may lead to the conclusion that Ben Olson retained the fee in his one-half of the property on Nellie's death, and that his share therein passed to Grover Olson on Ben's death by devise pursuant to the agreement between Ben and Nellie. Under this view, the value of the property devised by Ben would be includible in his gross estate since Section 811(a), governing property in which the decedent had an interest at his death, provides no saving exemption. This decision, however, is limited to facts of ownership as determined by the Columbia County Court. The decree of that court requires a finding that Ben Olson transferred the remainder interest in his property to Grover Olson in an inter vivos, contractual exchange. As part of this transaction, Ben Olson received adequate consideration for the property transferred by him. Therefore, the value of the remainder interest in Ben Olson's property is not includible in his gross estate under the saving exception of Section 811(c) (1) (B).

The court adopts the stipulations of fact as its findings of fact. Its conclusions of law are as set forth above. Plaintiff may recover overpayment of tax in the amount of $40,031.27, together with such interest as the law provides.

Counsel for plaintiff is directed to prepare an order for judgment and judgment in accordance with this opinion, submitting them to the defendant for approval as to form and the arithmetical computation of the interest only.

---

3. These figures are arrived at by applying the factor .474642 from Table B of Regulations 105 (Present worth of $1, payable at the end of a certain number of years) to the 1933 value of one-half of the property in question, or $17,500.

This establishes the value of the remainder interest transferred by Ben Olson. The difference between $17,500 and the value of the remainder interest constitutes the value of a life estate in the property.